UNITED STATES, CINCINNATI AND COLUMBUS TRACTION COMPANY, AND INTERSTATE COMMERCE COMMISSION *v.* BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY AND THE NORFOLK AND WESTERN RAILWAY COMPANY.

APPEAL FROM THE UNITED STATES COMMERCE COURT.

No. 648.   Argued October 25, 28, 1912.—Decided November 11, 1912.

Under § 7 of the act of June 18, 1910, 36 Stat. 539, 547, c. 309, the Interstate Commerce Commission cannot require a main trunk road to make switch connections with a road which is not actually at the time a lateral branch road.

In this case *held,* that a railroad parallel with a main trunk line and operated by a traction company as an independent venture and not as a mere feeder was not a lateral branch railroad within the meaning of § 7 of the act of June 18, 1910.

An order to maintain through rates incident to a requirement to make switch connections is incidental thereto and falls with it.

*Quære* whether parties are bound in a higher court by findings based on specific investigations made by the lower tribunal without notice. See *Oregon R. R. Co.* v. *Fairchild,* 224 U. S. 510, 525.

195 Fed. Rep. 962, affirmed.

.THE facts, which involve the jurisdiction of the Interstate Commerce Commission to require carriers to establish switch connections, are stated in the opinion.

*Mr. Assistant Attorney General Denison,* with whom *Mr. Thurlow M. Gordon,* Special Assistant to the Attorney General, was on the brief, for the United States and *Mr. Charles W. Needham* for Interstate Commerce Commission, appellants:

The words "lateral branch line" as used in the American statutes prior to their adoption by Congress would have permitted either of the railroad lines to construct this traction line under charters authorizing their construction of "lateral branch lines." *Newhall* v. *Galena &c. R. R.,* 14 Illinois, 273, 274; *McAboy's Appeal,* 107 Pa. St. 548, 557; *Vollmer* v. *Schuylkill &c. Ry. Co.,* 115 Pa. St. 166; *B. & O. R. R.* v. *Waters,* 105 Maryland, 396; *Greenville & Hudson Ry. Co.* v. *Grey,* 62 N. J. Eq. 768, 770; *Florida &c. R. Co.* v. *Pensacola &c. R. Co.,* 10 Florida, 145, 165, 169; *Blanton* v. *Richmond &c. R. R.,* 86 Virginia, 618; *Wheeling Bridge Co.* v. *Camden Oil Co.,* 35 W. Va. 205; *Howard County* v. *Bank,* 108 U. S. 314.

The purpose of Congress in providing for switch connection with "lateral branch lines" was to provide an outlet for shippers who were dependent upon such outlet for reasonable access to the main arteries of interstate commerce. *I. C. C.* v. *D., L. & W. R. R. Co.* (*Rahway Case*), 216 U. S. 531. So long as the traction line in its dominant and principal character served shippers to whom the track connection was necessary to give them such an outlet into interstate commerce, it was a "lateral branch line" within the meaning of Congress. This conclusion of fact was found by the Commission not only from the geographical situation but from the commercial and industrial situation and the distribution of the population.

The order did not lack the technical prerequisites as to proper parties and prior formal request in writing. Act to Regulate Commerce, § 13, as amended June 18, 1910.

The order is not invalid because it did not require the Traction Company to furnish security for the expense of installing the switch connection. *Wisconsin &c. R. R.* v. *Jacobson*, 179 U. S. 287, 302; *State* v. *Chi., M. & St. P. Ry. Co.*, 115 Minnesota, 51, 53; *State* v. *C., B. & Q. R. R.*, 85 Kansas, 649; *O. R. & N. Co.* v. *Fairchild*, 224 U. S. 510.

The order compelling through routes was constitutional and within the Commission's statutory power. Act to Regulate Commerce, § 15; *Burlington &c. Ry.* v. *Dey*, 82 Iowa, 312, 338; *State* v. *Minn. & St. L. R. Co.*, 80 Minnesota, 191, 196; *Jacobson* v. *Wis. &c. Ry.*, 71 Minnesota, 519.

Neither the order nor the act required the petitioners to send their own cars beyond their own rails. *Central Stock Yards* v. *L. & N. R. R. Co.*, 192 U. S. 568, 571; *Burlington &c. Ry.* v. *Dey, supra;* 82 Iowa, 312, 338; *Rae* v. *Grand Trunk R. Co.*, 14 Fed. Rep. 401; *Mackin* v. *B. & A. R. Co.*, 135 Massachusetts, 201, 206; *Peoria &c. Ry.* v. *C., R. I. & P. R. Co.;* 109 Illinois, 35; *Hudson Valley Ry.* v. *B. & M. R. Co.;* 106 App. Div. (N. Y.) 375; *Mich. Cent. R. Co.* v. *Smithson*, 45 Michigan, 212; Service Companies, §§ 529, 530; *Mo. Pac. R. R.* v. *Larrabie Mills*, 211 U. S. 612; *Penn. Ref. Co.* v. *West N. Y. & P. R. Co.*, 208 U. S. 208, 222; *Cent. Stock Yards* v. *L. & N. Ry.*, 192 U. S. 568, 572.

The order is not void because, as to the physical condition of the Traction Company's line, the Commission supplemented the testimony of witnesses by independent investigation. This independent investigation was justified on the same ground as supports the right of a jury to "view" the subject-matter in controversy. *Cederberg* v. *Robison*, 100 California, 93; Sutherland on Damages, § 441, note, 1; Wigmore on Evidence, §§ 1150, 1168; *People* v. *D. & H. Canal Co.*, 165 N. Y. 362, 365.

However, judicial analogy should not control because of the importance of the Commission's administrative functions. *I. C. C.* v. *Baird,* 194 U. S. 25; *Boston Fruit & Produce Exchange* v. *N. Y. &c. R. Co.,* 4 I. C. C. Rep. 664, 678; Daish on Procedure before the I. C. C., §§ 137, 132, 136, 144; *M. & K. Shippers Assn.* v. *M., K. & T. Ry. Co.,* 12 I. C. C. Rep. 483, 484; *Origet* v. *Hedden,* 155 U. S. 228, 237; *Tang Tun* v. *Edsell,* 223 U. S. 673, 677; *Oceanic Steam Nav. Co.* v. *Stranahan,* 214 U. S. 320, 342; *Murray's Lessee* v. *Hoboken Land Co.,* 18 How. 272; *Union Bridge Co.* v. *United States,* 204 U. S. 364; *Monongahela Bridge Co.* v. *United States,* 216 U. S. 177; *Public Clearing House* v. *Coyne,* 194 U. S. 497; *West* v. *Hitchcock,* 205 U. S. 80; *Davidson* v. *New Orleans,* 96 U. S. 97.

In determining questions of fact arising under the Act to Regulate Commerce, the conclusions of the Commission are final and not reviewable by the Commerce Court. *Balt. & Ohio R. R.* v. *Pitcairn,* 215 U. S. 481; *Int. Com. Comm.* v. *D., L. & W. R. R. Co.,* 220 U. S. 235, 251.

*Mr. R. Walton Moore, Mr. Edward Barton* and *Mr. Theodore W. Reath,* with whom *Mr. Joseph I. Doran* and *Mr. F. Markoe Rivinus* were on the brief, for appellees.

*Mr. C. B. Matthews* filed a brief for the appellant, Cincinnati & Columbus Traction Company.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit to set aside an order of the Interstate Commerce Commission directing the appellees to establish switch connections with the road of the appellant and also through routes to and from points on that road.

20 I. C. C. Rep. 486. The Commerce Court made a decree as prayed, 195 Fed. Rep. 962, and an appeal was taken to this court. The facts material to our decision are as follows. The Baltimore and Ohio Southwestern Railroad and the Norfolk and Western Railway are trunk lines of steam railroads running east and west across the State of Ohio. After almost touching each other at Norwood, a suburb of Cincinnati, they draw apart, the former in a northerly, the latter in a southerly direction, but come together again at Hillsboro about fifty-three miles further to the east. The line of the Traction Company is an 'interurban' electric railway, for passengers and some freight, running under a state charter between Norwood and Hillsboro through the middle of the diamond enclosed by the steam roads, and authorized to go on to Columbus. For a number of miles easterly from Norwood to Stonelick, near Boston, the last mentioned road is very near and almost parallel to the tracks of one or the other of the steam roads, as it is again for the last five miles before reaching Hillsboro. In the intervening space, between Boston and Dodsonville, the towns and villages on the electric line are from five to ten or twelve miles by wagon distant from the nearest station on one of the steam roads. The Traction Company applied to the Commission for switch connections and they were ordered as we have said.

Some technical objections were raised, but the substantial question is whether the Traction Company is a "lateral, branch line of railroad" within the meaning of the first section of the Act to Regulate Commerce, amended by act of June 18, 1910, c. 309, § 7, 36 Stat. 539, 547. That section requires carriers subject to the act to establish switch connections with such lines on certain conditions; and, as amended, permits owners of such lines as well as shippers to make complaint to the Commission in case of the carriers' failure upon written application, and authorizes the Commission to hear, investigate and

determine whether the conditions exist, and to make an order directing the carrier to comply with the act. It will be seen without much argument that, unless the Traction Company is a lateral, branch line of railroad, the trunk line carriers, the appellees, are not subject to the requirement of the statute, so far as the Traction Company is concerned.

The words 'lateral, branch line' do not refer to what the applicant may become or be made by order of the Commission but to what it already is when it applies. The power of the Commission does not extend to ordering a connection wherever it sees fit, but is limited to a certain and somewhat narrow class of lines. The most obvious examples of such lines are those that are dependent upon and incident to the main line—feeders, such as may be built from mines or forests to bring coal, ore or lumber to the main line for shipment. We agree with the Commerce Court that the Traction Company is not within this class. It is an independent venture, in its general course parallel to, more or less competing with, the steam roads and working on a different plan. Presumably and so far as appears it was built and would have been run without regard to the existence of the steam roads. The cases cited on behalf of the appellants as to the power of railroad companies to construct branch roads under their charter do not apply. There the determination of the company fixes the character of the branch; it builds the branch from the beginning as incident to the purposes of the company. But here, as we have said, this determination of the Commission that the applicants shall be a branch is not enough; the applicant must be a branch before it applies. That is the absolute and reasonable condition. That some shippers would be accommodated by a switch connection is not enough.

The order to maintain through routes was incident to the requirement of switch connections and falls with it.

We understand that it was based on the assumption that the connections were to be made, and therefore do not go into the question of power under § 15.

It is unnecessary to consider objections to the conclusion of the Commission that it was safe and reasonably practicable, &c., to establish the switch. We remark that it is stated in the Commission's report that they base their conclusion more largely upon their own investigation than upon the testimony of the witnesses. It would be a very strong proposition to say that the parties were bound in the higher courts by a finding based on specific investigations made in the case without notice to them. See *Washington, ex rel. Oregon R. R. & Nav. Co.* v. *Fairchild*, 224 U. S. 510, 525. Such an investigation is quite different from a view by a jury taken with notice and subject to the order of a court, and different again from the question of the right of the Commission to take notice of results reached by it in other cases, when its doing so is made to appear in the record and the facts thus noticed are specified, so that matters of law are saved.

*Decree affirmed.*