## PENNSYLVANIA R. CO. v. UNITED STATES.

(District Court, W. D. Pennsylvania. May Term, 1923.)

No. 837.

1. **Commerce ⊗═86—Interstate Commerce Commission not bound by technical rules of pleading and practice.**

The Interstate Commerce Commission is an administrative body, and is not to be hampered in its proceedings by the hard and fast rules as to pleading and practice which govern courts of law.

2. **Commerce ⊗═86—Orders of Interstate Commerce Commission establishing rates may be made only after notice of hearing.**

Orders of the Interstate Commerce Commission on the subject of rates are quasi judicial in character and are void, if made without notice of hearing.

3. **Commerce ⊗═88—Amendment of order by Interstate Commerce Commission without notice to party held valid.**

The Interstate Commerce Commission *held* to have power to amend an order previously made, to remove ambiguity, without notice to a party, where the subject-matter of the amendment was within the original inquiry on which evidence was introduced at the hearing.

In Equity. Suit by the Pennsylvania Railroad Company against the United States. On motion for preliminary injunction. Motion denied, and bill dismissed.

James Stillwell, of Chicago, Ill., for plaintiff.

Blackburn Esterline, Asst. Sol. Gen., P. J. Farrell, and E. M. Reidy, all of Washington, D. C., for the United States.

Before DAVIS, Circuit Judge, and THOMSON and GIBSON, District Judges.

GIBSON, District Judge. This is an application for a preliminary injunction to restrain pendente lite the Interstate Commerce Commission from enforcing its order upon the Pennsylvania Railroad Company to establish certain freight rates.

On February 24, 1920, the Pittsburgh Terminal Railroad & Coal Company filed with the Interstate Commerce Commission a petition for an order requiring the Pennsylvania Railroad Company and others to establish and maintain through routes and joint rates applicable thereto, from points on the West Side Belt Railroad Company to points east of Harrisburg on and via the line of said Pennsylvania Railroad Company, as shown in the last-named company's Tariff AA—I. C. C. 1132, not higher than those contemporaneously in effect from the Westmoreland group.

After due hearing, the Interstate Commerce Commission, on August 4, 1921, made an order wherein the Pennsylvania Railroad Company and others were—

"notified and required to cease and desist, on or before November 15, 1921, and thereafter to abstain, from publishing demanding, or collecting for the transportation of bituminous coal in carloads from points on the West Side Belt Railroad to interstate destinations east of Harrisburg, Pa., as

⊗═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shown in Pennsylvania Railroad Tariff AA—I. C. C. No. 1132, rates which exceed the group rates which they contemporaneously maintain on like traffic to the same destinations from points on the Peters Creek and Ellsworth branches of the Monongahela Division of the Pennsylvania Railroad and on the Monongahela Railway."

And by the same order the Pennsylvania Railroad Company was ordered to establish, upon due notice to the Commission and the general public, and thereafter to maintain, from and to said points, rates which shall not exceed the group rates which they contemporaneously maintain on like traffic to the same destinations from said points on the Peters Creek and Ellsworth branches of the Monongahela Division of the Pennsylvania Railroad and on the Monongahela Railway.

Thereafter the Pennsylvania Railroad Company, purporting to comply with the order of the Commerce Commission, published and filed its Supplement No. 8 to Pennsylvania Railroad Company Tariff AA—I. C. C. No. 1324, providing for joint rates from mines located on the West Side Belt Railroad to interstate destinations shown in Pennsylvania Railroad Tariff No. 1132, or Tariff No. 1500, which superseded it. It refused, however, to establish rates to Atlantic Coast piers, either local or for transshipment by water.

This interpretation of its order of August 4, 1921, on the part of the Pennsylvania Railroad Company, having been called to its attention, the Interstate Commerce Commission, on October 24, 1922, issued an order amending the order of August 4, 1921, by the insertion of the words "including Atlantic Coast piers, rates, either local or for transshipment by water," after the words, "interstate destinations east of Harrisburg, Pa., as shown in Pennsylvania Railroad Tariff AA—I. C. C. No. 1132." No notice or hearing was given the Pennsylvania Railroad Company prior to the issuance of this amendment, other than the notice and hearing accorded it before the original order was made.

After the order of October 24, 1922, was made, the Pennsylvania Railroad Company filed a motion with the Commerce Commission, whereby it sought to set aside the amendatory order. The Pittsburgh Terminal Railroad & Coal Company filed a memorandum in reply to this motion. After a consideration of the motion and reply, the Commerce Commission refused to vacate its order of October 24, 1922; and thereupon the Pennsylvania Railroad Company filed its complaint in the instant case, wherein it alleges, in substance, that the amendatory order was unlawful and tends to deprive the complainant of its property without due process of law, in that it was made without a formal complaint having been made to the Commission and without a hearing having been accorded. The United States has made answer to this complaint and prays the dismissal of the bill; and Interstate Commerce Commission and the Pittsburgh Terminal Railroad & Coal Company have intervened and have also answered it.

On December 27, 1922, in accordance with the requirement of law in the premises, hearing was had before a Circuit Judge and two District Judges of this circuit, upon complainant's prayer for a preliminary injunction.

As the matter presented itself to the court, it appeared more or less of an academical question. The power of the Commerce Commission to make the order in issue, upon complaint filed and after hearing, was not questioned upon the argument. The Commission could, and doubtless would, proceed to make the same order after complaint and hearing, in event that we should set aside the present order for want of formal requisites in the procedure. However, we do not base our action upon this possibility.

[1, 2] The Interstate Commerce Commission is an administrative body, and is not to be hampered in its proceedings by the hard and fast rules as to pleading and practice which prevail in courts of law. Spiller v. Atchison, T. & S. F. Ry. Co., 253 U. S. 117, 40 Sup. Ct. 466, 64 L. Ed. 810. On the other hand, however, its orders on the subject of rates are quasi judicial in character, and are void if made without a hearing. Interstate Commerce Commission v. L. & N. R. R., 227 U. S. 88, 33 Sup. Ct. 290, 57 L. Ed. 431.

Having in mind the foregoing general propositions, we proceed to the consideration of the question involved. Our inquiry herein is confined to narrow limits: Did the Interstate Commerce Commission arbitrarily fix the rate in dispute without hearing granted?

The petitioner herein points to the petition filed with the Interstate Commerce Commission by the Pittsburgh Terminal Railroad & Coal Company as the foundation of the issue before the Commission. Counsel for the Pennsylvania Railroad alleges that such petition nowhere contains any reference to Atlantic Coast piers, and contends that the Pittsburgh Terminal Railroad by it only sought to establish through routes and joint rates from points on the line of the West Side Belt Railroad to points east of Harrisburg on and via the line of the Pennsylvania Railroad, as shown in the latter railroad's Tariff AA—I. C. C. 1132, which tariff contained no mention of Atlantic Coast piers. The rates to such piers were shown in another tariff, AA—I. C. C. 1126. It is further contended by the complainant herein that the issue before the Commerce Commission was limited to the matters set forth in the petition of the Terminal Railroad, and that such limitation was recognized by the Commission in its order of August 4, 1921. It is further urged that the Commerce Commission, by its so-called amendment of the original order on December 24, 1922, was dealing with matters not properly before it, and that, when it undertook to make the amendatory order without complaint and hearing, it was acting contrary to law.

On the other hand, the respondents herein claim that the original petition to the Commission, and the original order thereon, had in contemplation the establishment of rates to Atlantic Coast piers. It is admitted that such piers were not specifically named in Tariff AA—I. C. C. 1132, but it is pointed out that the petition and order refer to destinations east of Harrisburg shown on Tariff AA—I. C. C. 1132, and not to the rates appearing in it. The piers in question, it is generally admitted, were substations of certain of the destinations shown upon Tariff AA—I. C. C. 1132. Respondents allege that the Atlantic Coast piers were frequently mentioned in the testimony taken at the

hearing held by the Interstate Commerce Commission, prior to the promulgation of the original order, and that it was generally understood at such hearing, that the transshipment of coal by water, from said piers, was one of the subjects of the inquiry.

Respondents further call attention to the fact that the Pennsylvania Railroad Company, after the issuance of the amendatory order, filed a motion to vacate it, supported by brief, which motion and brief were answered by the Pittsburgh Terminal Railroad. The record of the Interstate Commerce Commission shows their motion and answer were considered by the Commission prior to the refusal of the motion. In short, it is claimed by respondents that the complainant had full and fair hearing relative to the subject-matter of the order of October 24, 1922.

If we were called upon to pass upon the petition of the Pittsburgh Terminal Railroad & Coal Company, as a basis for the order of October 24, 1922, under the rules of pleading and procedure of a court of law, we might be in doubt as to its sufficiency; but we are not required to view the petition in that light. It is our duty to determine whether or not the complainant was heard, or was given opportunity to be heard, upon the question of the establishment of freight rates for the shipment of coal, from points on the West Side Belt Railroad to Atlantic Coast piers, both local and for transshipment by water.

[3] Under the complaint of the Terminal Railroad, and considering the necessary liberality of the practice and procedure before the Commerce Commission, that question might well have been a part of the subject-matter of the inquiry upon hearing. And it has been made to appear to the court, and we find as a fact, that testimony actually was taken at the hearing relative to shipment of coal to said piers and transshipment by water. The transcript of the testimony taken makes it quite plain that the participants in the hearing had the matter in mind, and recognized the fact that the Pittsburgh Terminal Railroad & Coal Company was seeking a complete outlet for its coal to and through the destinations named in Tariff AA—I. C. C. 1132. In other words, we find there was no actual denial of hearing upon the question involved by the Interstate Commerce Commission.

Assuming this fact, there can be no question, we think, as to the power of the Commission to amend its order, without further hearing, for the purpose of removing ambiguity. The prayer for a preliminary injunction is denied.

By the record offered by the petitioner upon the hearing of the motion for preliminary injunction and by its admission of fact during said hearing, we are of the opinion that the bill is without equity. An order will therefore be drawn dismissing the same.