## CHESAPEAKE & O. RY. CO. v. UNITED STATES.
### No. 3477.

District Court, S. D. West Virginia.
July 29, 1935.

M. Carter Hall, of Richmond, Va. (Elmer L. Beach, of Richmond, Va., on the brief), for petitioner.

Robert E. Quirk, of Washington, D. C., for intervener Island Creek Coal Co.

Harry S. Elkins, of Washington, D. C., for intervener West Virginia Coal & Coke Co.

Elmer B. Collins, Sp. Asst. to Atty. Gen., for the United States.

C. R. Hillyer, of Chicago, Ill., for interveners Northeast Kentucky Coal Bureau and the Commonwealth of Kentucky.

David C. Walls, Asst. Atty. Gen. (Bailey P. Wootton, Atty. Gen., for the State of Kentucky, on the brief), for intervener State of Kentucky.

Nelson Thomas, Atty., Interstate Commerce Commission, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., on the brief), for intervener Interstate Commerce Commission.

Before NORTHCOTT, Circuit Judge, and McCLINTIC and GLENN, District Judges.

NORTHCOTT, Circuit Judge.

This is a suit in equity brought in the District Court of the United States for the Southern District of West Virginia, at Charleston, seeking to enjoin, set aside, annul, and suspend a certain order of the Interstate Commerce Commission, hereinafter referred to as the commission.

Upon the bringing of the suit, the judge of the District Court convened a three judge court under section 266 of the Judicial Code, as amended (28 USCA § 380). Upon the convening of the court, the Is-

land Creek Coal Company, a corporation, and the West Virginia Coal & Coke Corporation were permitted to intervene in support of the petition, and the commonwealth of Kentucky, the Northeast Kentucky Coal Bureau, and the Interstate Commerce Commission were permitted to intervene in opposition. It was stipulated between the parties that the hearing should be final.

The petitioner is a corporation organized under the laws of the state of Virginia and is a citizen and resident of the Eastern District of that state and owns and operates, or leases and operates, as a common carrier, lines of railroad in several states, among others, in the states of West Virginia and Kentucky. It is engaged in the interstate transportation of persons and property, including transportation of bituminous coal, in the Big Sandy districts in Kentucky, from what is known as the Northeast Kentucky field, to Catlettsburg, Ky., and from what is known as the Logan field in West Virginia to Huntington, W. Va.

In July, 1933, Northeast Kentucky Coal Bureau, as complainant, filed a complaint with the commission (Docket No. 26080) against the railway company, alleging that while the all rail rates from the Northeast Kentucky field in Kentucky and the Logan field in West Virginia are the same to interstate destinations, the railway company maintained a proportional rate of 50 cents per net ton on bituminous coal from points in the Logan field to Huntington, W. Va., when for transshipment by river to destinations beyond Huntington, that the railway did not maintain a proportional rate on bituminous coal from origin points on its line in the Northeast Kentucky field to Catlettsburg, Ky., when for transshipment by river to points beyond Catlettsburg, but maintained a rate of $1.17 per net ton for such coal. The complaint further alleged that the railway's failure to establish and apply rail rates of 50 cents per net ton for the haul to Catlettsburg from the Northeast Kentucky field for river transshipment was unreasonable and unjust and in violation of section 1 of the Interstate Commerce Act (49 USCA § 1), and unduly disadvantageous to complainants in violation of section 3 of said act (49 USCA § 3). Complainant prayed that the commission, by order, command the railway to cease and desist from said violations of said act and put in force a rate

from points on its line in the Northeast Kentucky field to Catlettsburg, for transshipment by river, a rate not in excess of the 50 cents per ton charged by the railway for the transportation of bituminous coal from points in the Logan field to Huntington.

The Northeast Kentucky field referred to in the complaint before the commission, and in the petition herein, is served by one of petitioner's branch lines running northward to Catlettsburg, a point on the Ohio river near the mouth of the Big Sandy river, in the extreme northeastern section of Kentucky, a short distance west of Huntington, W. Va., and a junction with petitioner's east and west main line. Across the Big Sandy river in West Virginia is located the Logan field, which is likewise served by a branch line of petitioner herein running northward to join the east and west main line at Barboursville, W. Va., a point east of Huntington, W. Va., also on the Ohio river.

Coal traffic for transshipment by water beyond Catlettsburg was, at the time of the filing of the complaint, entirely prospective, no transshipment facilities being in existence for transferring coal at Catlettsburg. Complainant asserted its intention to build and operate such transshipment facilities upon the establishment and maintenance of the 50-cent rate sought.

After the filing of the complaint, before the commission, hearings were held, briefs were filed, and the case was orally argued. On May 22, 1934, the commission, by division 2, one commissioner dissenting, issued its report and order dismissing the complaint and finding that the rates from the Northeast Kentucky coal field to Catlettsburg were not unreasonable or unduly prejudicial.

In July, 1934, complainant filed a petition for reargument and reconsideration by the entire commission; in September, 1934, the proceeding was reopened and reargument was had before the entire commission.

On February 7, 1935, the commission, the chairman and one commissioner dissenting, issued its report and order reversing the finding of division 2, and entered the following order:

"It appearing, That on May 22, 1934, division 2 made and filed its report and entered its order in the above-entitled proceeding, and on September 28, 1934, the

Commission, by appropriate order, reopened said proceeding for reargument and reconsideration;

"It further appearing, That such reargument and reconsideration has been had, and that the Commission has, on the date hereof, made and filed a report on reargument and reconsideration, containing its further findings of fact and conclusions thereon, which said report and the aforesaid report of May 22, 1934, are hereby referred to and made parts hereof:

"It is ordered, That the above-named defendant be, and it is hereby, notified and required to cease and desist, on or before May 24, 1935, and thereafter to abstain, from publishing, demanding, or collecting for the transportation of bituminous coal, in carloads, from and to the points designated in the next succeeding paragraph hereof, rates which exceed those prescribed in said paragraph.

"It is further ordered, That said defendant be, and it is hereby, notified and required to establish, on or before May 24, 1935, upon notice to this Commission and to the general public by not less than 30 days' filing and posting in the manner prescribed in section 6 of the Interstate Commerce Act, and thereafter to maintain and apply for the transportation of bituminous coal, in carloads, from mines in northeastern Kentucky, as described in the aforesaid reports, to Catlettsburg, Ky., for interstate movement beyond by river, or for interstate rail movement in connection with such river traffic, rates which shall not exceed the corresponding concurrent rates maintained by it on bituminous coal, in carloads, from mines in the Logan, W. Va., coal field, as described in said reports, to the same destinations.

"And it is further ordered, That this order shall continue in force until the further order of the Commission." (The effective date of this order was afterwards extended to July 24, 1935.)

The petitioner herein thereupon brought this suit seeking to enjoin and set aside the order made by the commission. The interveners, the Island Creek Coal Company and the West Virginia Coal and Coke Corporation, are producers of coal in the Logan field, shipping under the rate given by the railway to Huntington for transshipment by river, and intervene in the instant proceeding for the purpose of supporting the petition for the injunction. Interveners Interstate Commerce Commission, Northeast Kentucky Coal Bureau, and the commonwealth of Kentucky, intervene in this proceeding for the purpose of sustaining the order of the commission. When the cause came on to be heard, the proceedings had before the Interstate Commerce Commission were introduced in evidence and it was shown by stipulation that the railway company had, since the entry, by the commission, of the order complained of, put into effect a new schedule of rates covering the transportation of coal from the Logan field and from the Northeast Kentucky field. Under this new schedule the rate on coal from the Logan field to Huntington by rail and from the Northeast Kentucky field to Catlettsburg by rail was fixed at 87 cents per ton, and the rate from the Logan field to Huntington for transshipment by water was fixed at 75 cents per ton. After oral argument, briefs were filed and the cause submitted.

Three grounds were alleged by the railway company in attacking the validity of the order entered by the commission; first, that, under the pleadings, the evidence and the commission's report on the complaint of the Northeast Kentucky Coal Bureau, the order made by it was beyond the issues involved and constituted an invalid attempt to exercise authority under section 3 of the Interstate Commerce Act; second, that there was no substantial evidence to support the commission's finding and conclusion that the assailed rates to Catlettsburg, Ky., were unduly prejudicial in violation of said section 3; third, that the commission's order was not supported by proper findings of the basic or quasi jurisdictional facts.

As to the first point, we are of the opinion that the order made by the commission was within the issues raised by the pleadings. The complaint of the Northeast Kentucky Coal Bureau, filed before the commission, clearly alleges the violation of section 3 of the Interstate Commerce Act and charges that the rates at that time maintained and enforced by the railway company were unreasonable and unjust. There is nothing in the argument made on behalf of the petitioner that this allegation should be considered withdrawn because it appeared that the complainant would be satisfied only with a 50-cent rate. While the complaint as filed before the commission emphasized the request for a 50-cent rate by the Kentucky Coal Bureau, neither in the complaint nor in the pro-

ceedings before the commission was it at any time stated that an alternative order, which could be complied with by increasing the rates alleged to be preferential, was not sought. It is, of course, true that the complainant sought to secure the 50-cent rate if possible. This was quite natural and is a usual method of procedure, yet it clearly appears from all the proceedings that, if the 50-cent rate could not be secured, the complainant sought for an equalized rate for transshipment by river. Complainant's counsel made it clear at the hearing before the commission that the allegation that section 3 of the act had been violated had not been withdrawn. The cases relied upon on behalf of the petitioner as authority to the effect that the allegation of unjust discrimination was, in effect, withdrawn are easily distinguishable. In these cases an alternative order was not sought and statements to this effect were direct and positive.

Under paragraph 1, § 13, of the Interstate Commerce Act (49 USCA § 13, par. 1); after a complaint is filed before the commission, it becomes the duty of the commission to investigate the complaint and take proper action upon its own motion. While it seems clear that the action of the commission was proper under the issues raised by the complaint, it is also true that, when a complaint of an unjust discrimination is made before the commission, its power is not restricted by the issues raised on the complaint, provided, of course, that the railway alleged to have committed the violation of the act had full opportunity to make defense against such charge. Here the railway had such an opportunity and the issue of unjust discrimination, as to the rates in effect for transshipment by river, was fully discussed in the hearing before the commission and evidence was offered on this point. It cannot be said that the railroad had no opportunity to make defense against the charge.

It is the duty of the commission to look to the substance of the complaint rather than its form and it is not limited in its action by the strict rules of pleading and practice which govern courts of law. Pennsylvania Ry. Co. v. United States (D. C.) 288 F. 88; United States v. Baltimore & Ohio S. W. R. Co., 226 U. S. 14, 33 S. Ct. 5, 57 L. Ed. 104. See, also, Louisville & N. R. Co. v. Sloss-Sheffield Steel

& Iron Co. (C. C. A.) 295 F. 53; Id., 269 U. S. 217, 46 S. Ct. 73, 70 L. Ed. 242.

A full discussion of this point will be found in A. & S. R. R. v. United States (D. C.) 49 F.(2d) 414. See, also, New York Central & Hudson River Railroad Co. v. Interstate Commerce Commission (C. C.) 168 F. 131; Spiller v. Atchison, Topeka & Santa Fe Ry. Co., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810.

While it is true that the complainant sought a 50-cent rate if it could possibly secure it, it also sought, in any event, parity with the rate from the Logan field. The action of the commission in entering the order complained of was within the scope of its authority and the order was entered after the petitioner here had had its day in court.

As to the second point, we are again of the opinion, not only that there was substantial evidence to support the commission's finding that the rates complained of were unduly prejudicial and in violation of section 3 of the Interstate Commerce Act, but we do not see how the commission could have reached a different conclusion. The evidence proved, as was stated by one of the commissioners in dissenting from the report of division 2 of the commission, that the coal from both the Kentucky and West Virginia fields was similar in quality, was mined from practically the same vein, moved in the same direction, over the petitioner's railroad, and under practically the same condition as to transportation. It was also shown in the evidence before the commission that the members of the complainant bureau were damaged by the difference in the rates, through loss of the sale of their coals by having to charge a higher price per ton. The mere fact that there was a discrimination in rates of itself would carry with it the presumption that the parties paying the higher rate were damaged. The evidence was ample upon which to base the finding and order of the commission.

The purpose of this section of the Interstate Commerce Act was to secure equality of treatment to all and to prevent unjust discrimination, and the language of the act is comprehensive enough to include every form of unjust discrimination. New York, etc., R. Co. v. Int. Com. Comm., 200 U. S. 361, 26 S. Ct. 272, 50 L. Ed. 515; Louisville & Nashville R. Co. v.

Mottley, 219 U. S. 467, 31 S. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; United States ex rel. Morris v. Delaware, L. & W. R. Co. (C. C.) 40 F. 101; Nashville, etc., Ry. v. Tennessee, 262 U. S. 318, 43 S. Ct. 583, 67 L. Ed. 999.

■ It is claimed that a former finding of the commission to the effect that a $1.17 rate to Catlettsburg was reasonable precluded the finding of the commission as to unjust discrimination, but the Supreme Court has held that a rate may be reasonable under section 1 and still violate section 3 as being an unjust discrimination. Interstate Commerce Commission v. Baltimore & Ohio R. Co., 145 U. S. 263, 12 S. Ct. 844, 36 L. Ed. 699; United States v. Ill. Central R. Co., 263 U. S. 515, 44 S. Ct. 189, 68 L. Ed. 417.

■ The existence of undue preference is a question of fact to be determined by the commission. Texas & Pacific R. Co. v. Int. Com. Comm., 162 U. S. 197, 16 S. Ct. 666, 40 L. Ed. 940; Int. Com. Comm. v. Alabama Midland R. Co., 168 U. S. 144, 18 S. Ct. 45, 42 L. Ed. 414.

■ It is contended that the evidence failed to establish a similarity of operating conditions between the two coal fields, but we cannot agree with this contention. The evidence on this point was ample, especially in view of the fact that if the operating conditions were not equal, the evidence necessary to establish that fact lay peculiarly within the knowledge of the railroad. Had the operating conditions not been similar, it would have been a simple and easy matter for the railroad to have shown the difference. This it did not do.

■ We are also of the opinion that the commission's order was supported by a proper finding of facts. An examination of the report of the commission, after reargument, shows that the commission found that while there was at that time no river transshipment facilities at Catlettsburg, the complainant intended, upon the establishment of a lawful rate from the mines, to build and operate such facilities; that it was apparent that there was a prospective movement which could readily and undoubtedly be handled in a manner to establish its interstate character; that the conditions existing on the respective branches of the petitioner railroad running from the Logan field to Huntington and from the Northeast Kentucky coal field to Catlettsburg were about the same; that the average distance of the haul from the Logan field was about 85 or 90 miles and from the Kentucky field only 10 or 12 miles greate ; that the coals from the two fields were of the same grade and quality and keenly competitive; and that on all rail traffic to central territory the rates from the two fields were on a parity. Upon these facts the commission concluded that the situation which gave the coal producers in the Logan field the benefit of so great a difference in the rates in question necessarily was to the detriment and damage of the coal producers in the Northeast Kentucky field, a conclusion in which we concur. As was aptly stated by the commission: "The act is specifically directed against undue preference and all other forms of unjust treatment of the shipping public."

These findings of fact were amply sufficient to support the order made.

■ Only the ultimate condition, and not formal and precise findings of fact, are required of the commission in order to bring a particular case within the terms of this section of the statute. United States v. B. & O. Ry., 293 U. S. 454, 55 S. Ct. 268, 79 L. Ed. 587.

Here the commission has not only found the ultimate condition bringing the case within the terms of the statute but has also found the specific facts.

Cases relied upon by the petitioner to sustain its contention that the findings of fact were not sufficient (United States et al. v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co. et al., 55 S. Ct. 462, 79 L. Ed. 1023, decided March 4, 1935; United States v. Baltimore & Ohio Railroad Co. et al., supra; Atchison, Topeka & Santa Fe Railway Co. v. United States, 55 S. Ct. 748, 79 L. Ed. ——, decided April 29, 1935; A. L. A. Schechter Poultry Corporation v. United States, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947, decided May 27, 1935) are all cases in which some special finding of fact is necessary in order to bring about the imposition of a penalty or the doing of some specific thing, for instance, where reparation orders were made, and are not cases applicable to enforcement of an order under section 3 of the Interstate Commerce Act. No case is cited on behalf of petitioner which holds that when the commission makes an order under section 3 of the act it must make any finding in addition to one couched in the language

of the statute. It is difficult to see just what further findings of fact, other than those made by the commission, could have been made in order to justify the order entered.

█ Congress has created the Interstate Commerce Commission to act as a fact-finding body and to deal with questions involving transportation and rates therefor. It is universally held that courts are without power to make rates, and they will not substitute their judgment for that of the commission, which is an experienced body equipped with facilities, which the courts do not have, for determining such questions. We can only pass upon acts of the commission for the purpose of ascertaining whether it has acted arbitrarily and without evidence or has transcended its lawful powers. Standard Oil Co. v. United States, 283 U. S. 235, 51 S. Ct. 429, 75 L. Ed. 999; Interstate Commerce Commission v. Delaware, L. & W. Ry. Co., 220 U. S. 235, 31 S. Ct. 392, 55 L. Ed. 448; United States v. Louisville & N. R. R. Co., 235 U. S. 314, 35 S. Ct. 113, 59 L. Ed. 245; Proctor & Gamble v. United States, 225 U. S. 282, 32 S. Ct. 761, 56 L. Ed. 1091.

█ As was said by Manton, C. J., in Akron, Canton & Youngstown Ry. Co. v. United States (D. C.) 22 F.(2d) 199, 203: "The determination of whether a rate is unreasonable or discriminatory is a question on which the finding of the Commission is conclusive, if it is supported by any substantial evidence, unless there is some irregularity in the proceeding or some error in the application of the rules of law. Western Paper Makers' Chemical Co. v. U. S., 271 U. S. 268, 46 S. Ct. 500, 70 L. Ed. 941; Skinner & Eddy Corp. v. U. S., 249 U. S. 557, 39 S. Ct. 375, 63 L. Ed. 772; Spiller v. Atchison, T. & S. F. Ry., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810. It is not for the courts to weigh the evidence introduced before the Commission. Western Paper Makers' Chemical Co. v. U. S., supra. And the soundness of the reasoning by which the conclusions are reached and the wisdom of the regulations which it prescribes are matters which are left by Congress to the Commission as the administrative 'tribunal appointed by law and informed by experience.' Ill. Central Ry. v. Interstate Commerce Commission, 206 U. S. 441, 27 S. Ct. 700, 51 L. Ed. 1128. An examination of this record requires us to support the order of the Commission as against the attacks made upon it."

### Findings of Fact.

We find the following facts: That under the pleadings and proceedings before the commission the order made by it was within the issues involved and was a valid exercise of its authority under the statute; that there was substantial evidence to support the commission's finding and conclusion that the rates in question were unduly prejudicial and in violation of said section 3; and that the commission's order was sustained by a proper finding of facts.

### Conclusions of Law.

We are, therefore, for reasons above stated, of the opinion that the injunction prayed for should be refused and the petition herein dismissed because it fails to state a case within the equitable jurisdiction of this court.