STANISLAUS COUNTY, a Political Subdivision of the State of California, and Stanislaus County Chamber of Commerce, a Non-profit corporation, Plaintiffs,

v.

UNITED STATES of America, a sovereign body politic, and the Interstate Commerce Commission, Defendants,

and

The Atchison, Topeka and Santa Fe Railway Company, a corporation, et al., Intervening Defendants.

Civ. No. 8471.

United States District Court
N. D. California, N. D.

Feb. 7, 1964.

MacBride, J., dissented.

Tom B. Markley, San Francisco, Cal., for plaintiffs.

Lee Loevinger, Asst. Atty. Gen., and Colin Smith, Department of Justice, Washington, D. C., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for defendant United States.

Robert W. Ginnane, General Counsel, and Arthur J. Cerra, Asst. General Counsel, Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Charles W. Burkett, Jr., John Mac-Donald Smith, and W. Harney Wilson, San Francisco, Cal., for intervening defendants.

Before DUNIWAY, Circuit Judge, and HALBERT and MacBRIDE, District Judges.

HALBERT, District Judge:

Plaintiffs, Stanislaus County and Stanislaus County Chamber of Commerce, have brought this action against defendants United States and Interstate Commerce Commission to set aside and annul an order of the I.C.C. entered in the proceeding entitled Stanislaus County, et al. v. Atchison, Topeka & Santa Fe Railway Company et al., I.C.C. Docket No. 31901 (315 I.C.C. 459). On appropriate motion the defendant railroads were granted permission to intervene.

Jurisdiction over this action is conferred by Title 28 U.S.C. § 1336. A three-judge court was convened pursuant to Title 28 U.S.C. §§ 2284 and 2325.

Initially, plaintiffs instituted proceedings before the I.C.C. based on § 3(1) of the Interstate Commerce Act (Title 49 U.S.C. § 3(1)) to remove an alleged unlawful preference and prejudice caused by the maintenance of higher carload and less-than-carload rates for shipments between points in Stanislaus County and

the Pacific Northwest and Intermountain territories than for shipments between these territories and the allegedly preferred areas. In a report filed on November 21, 1957, the Commission found in favor of defendants (302 I.C.C. 365).[1] This Court subsequently annulled and set aside the order of the Commission and remanded the cause for further consideration to be followed by a clearer statement of findings and conclusions (Stanislaus County, California v. United States, D.C., 193 F.Supp. 145). The proceedings were accordingly reopened, and even though there was a request by plaintiffs that they be further heard, the Commission, without receiving additional testimony, briefs or arguments, made its decision again in favor of defendants on January 11, 1962. This latter decision is the subject of the instant action.

The scope of review of this Court over the Commission's order is fixed by the Administrative Procedure Act (Title 5 U.S.C. § 1009(e)). The Court must hold unlawful and set aside any action, finding, or conclusion found to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, or unsupported by substantial evidence. Otherwise, the Court may not reweigh the evidence nor question the soundness of the Commission's reasoning (Shippers' Car Supply Committee v. I. C. C., D.C., 160 F.Supp. 939). The Court must review the whole record, including the Examiner's proposed report (Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456).

The Commission ultimately found that the assailed rates were not shown to be unduly prejudicial or preferential in violation of § 3(1). The controlling phrases of that section are "undue or unreasonable preference or advantage" on the one side and "undue or unreasonable prejudice or disadvantage" on the other side.

Congress has not seen fit to provide the Commission with a definition of these phrases. The courts have regarded the definition as a question committed largely to the sound judgment of the Commission to be determined by the Commission in a case by case fashion (Swayne & Hoyt v. United States, 300 U. S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659; and Manufacturers Ry. Co. v. United States, 246 U.S. 457, 481, 38 S.Ct. 383, 62 L.Ed. 831).[2] Such a determination involves a finding on a mixed question of law and fact by the Commission in each case, and the Commission's conclusion may be upheld by the court on judicial review only if there is a "rational basis" in law for the conclusion thus reached (Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147; and Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260). The Commission's basic findings must be supported by the evidence, and its ultimate finding must flow rationally from the basic findings (Capital Transit Co. v. Public Utilities Commission, 93 U.S. App.D.C. 194, 213 F.2d 176).

The Commission's ultimate statutory finding appears to be based on two separate basic findings. If either such basic finding both had support in the evidence and was legally adequate to support the Commission's ultimate finding, the Court would be obliged to affirm the Commission's order (Cf. Communist Party of U. S. v. Subversive Activities Control Board, 367 U.S. 1, 67, 81 S.Ct. 1357, 6 L.Ed.2d 625). We are, however, of the view that, for the reasons set forth below, the Commission's ultimate finding that the assailed rates are not

1. The Commission's decision was in opposition to the proposed report of Examiner John A. Russell, who after a full hearing, found in favor of plaintiffs and recommended issuance of an order directing removal of the rate discrimination as unlawful.

2. It is unfortunate that the Commission, in its many years of dealing with § 3(1), has not devised some better guide lines than it has to determine whether, in any particular case, undue preference or advantage exists. It does not, however, appear to us that it is for this Court to correct this situation.

unlawfully prejudicial or preferential is not, as a matter of law, supportable by either of its basic findings.

The Commission stated its first basic finding as follows:

"We conclude that the described conditions which resulted in the grouping of the allegedly preferred points with San Francisco are not present with respect to points in the county, so as to require that the defendants establish from and to points in the county rates on the same bases as are the rates from the allegedly preferred points." (315 I.C.C., at p. 464.)

The various conditions which the Commission considered and found to differ with respect to the preferred areas when compared with points in Stanislaus County must be examined. The Commission first suggested that distances between points in Stanislaus County and the Pacific Northwest and Intermountain territories are greater than the distances between those territories and the allegedly preferred areas. The Commission subsequently, however, negated this condition as a justification for the rate discrimination.[3]

The first condition actually considered was the fact that when the San Francisco group was formed, points in the preferred areas were intermediate to San Francisco over railroad routes to and from the Pacific Northwest and Intermountain areas. Rates to and from San Francisco had been depressed because of water carrier competition. Since Title 49 U.S.C. § 4(1) provides that a carrier may not charge greater rates for a short haul than for a long haul over the same line or route in the same direction, it followed that those points which were intermediate along routes to San Francisco at the time the group was established should have been included in the San Francisco rate group.

■ The undisputed fact is, however, that transportation conditions have changed since the group was established. For example, the Vallejo area has not been intermediate to San Francisco since the construction of the main line of the Southern Pacific from Sacramento to San Francisco, and the San Jose area has not been intermediate to San Francisco since the construction of the Dumbarton Bridge in 1910. As far as intermediacy is concerned, any difference between these points and points in Stanislaus County is purely historical. There is no evidence whatsoever in the record to support a finding that there is any *present* difference with respect to intermediacy between these preferred points and points in Stanislaus County, and we cannot conclude that purely *past* intermediacy may rationally serve as any support for the Commission's ultimate finding. Intermediacy may not be considered as justification for present day disparity in rates as between areas otherwise similarly situated when such intermediacy has long ceased to exist.

■ The second condition considered by the Commission was termed "carrier competition." On this point the Commission said:

"Motor common carriers serving those areas observe the existing San Francisco grouping, and this has been a factor in preserving the rail-rate group." (315 I.C.C., at p. 463.)

There is no substance to this point. Motor carriers are subject to the same restrictions as the railroads insofar as undue or unreasonable preference or prejudice is concerned (Title 49 U.S.C. § 316 (d)). To attempt to justify rate discrimination by the railroads on the ground that the motor carriers discriminate simply begs the question, for dis-

---

3. "It thus appears that the determining factors in the establishment of the group to and from which the rates are the same in amount as San Francisco have been intermediate location over routes to and from that point, and carrier competition, rather than distance." (315 I.C.C., at p. 463.) Moreover, the figures set out at 315 I.C.C., at p. 461 show that differences in distances are so small as to be *de minimis.*

crimination by the motor carriers may very well also be unlawful. Unlawful activity by one's competitors may not justify similar activity on his part (Cf. Federal Trade Commission v. A. E. Staley Mfg. Co., 324 U.S. 746, 65 S.Ct. 971, 89 L.Ed. 1338). If discrimination by motor carriers can justify discrimination by the railroads, then discrimination by the railroads can justify discrimination by the carriers, and so it goes on with otherwise unlawful rates being perpetuated.

In order for motor carrier competition to rationally and legally serve as support for the Commission's ultimate finding, there must be some showing that the motor carrier rates are not themselves unlawful, i. e. that they are somehow justified. The Commission made no such finding, and we find no such showing in the record.

■ Thirdly, the Commission considered the proximity of the preferred areas to San Francisco, which has a greater population and industrial density. This consideration might provide a rational basis for the Commission's ultimate finding if the greater population and industrial density gave rise to lower costs to the railroads in serving the preferred areas, but the Commission made no such finding. As a matter of fact, no evidence of any cost differential to the railroads whatsoever appears in the record. Greater population and industrial density alone, without some showing of its effect on territorial or operating conditions, can be no basis for rate discrimination. If such justification were allowed, it would only serve to arbitrarily perpetuate existing economic inequities. As stated in New York v. United States, 331 U.S. 284, at p. 315, 67 S.Ct. 1207, at p. 1223, 91 L.Ed. 1492:

"If this discriminatory rate structure is not justified by territorial conditions, then its continued maintenance preserves not the natural advantages of one region but man-made trade barriers which have been imposed upon the country. Such a result cannot be reconciled with the great purposes of § 3(1) as amended in 1940."

■ It is possible that the Commission could have looked to other conditions in arriving at its finding that conditions with respect to the preferred areas were not present with respect to points in Stanislaus County, but those conditions described above are the ones discussed by the Commission in its order. "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based" (S. E. C. v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626). The Commission's first basic finding must be set aside as support for its ultimate finding, for the conditions upon which it was apparently based, insofar as they are supported by the evidence, are legally inadequate to support the ultimate finding.

We do not preclude the possibility that on the record as it stood before the Commission other conditions might have been shown which would justify the Commission's finding or that on reconsideration evidence might be adduced which would justify its finding.

The Commission states its second basic finding as follows:

"Also, we find that complainants have failed to sustain their burden of proving that the rate disparities complained of are a determining factor in their inability to meet market competition of the allegedly preferred area in the sale of products or in the attraction of new industries." (315 I.C.C., at pp. 464–465.)

This was, in effect, a finding that plaintiffs had not established that the rate disparity results in damage to the allegedly prejudiced area as has been required by the cases (See: Atchison, Topeka, and Santa Fe Ry. Co. v. United States, D.C., 218 F.Supp. 359.).

■ The Commission considered certain evidence offered by plaintiffs "to show competition between the county and the allegedly preferred area and to estab-

lish the existence of unlawful preference and prejudice." [4] Commissioner Freas based his concurring opinion entirely on his finding that plaintiffs had not shown sufficient competition to warrant a presumption of damage from the rate disparity (Cf. Chesapeake & O. Ry. Co. v. United States, D.C., 11 F.Supp. 588). The majority of the Commission found that plaintiffs' evidence did not establish sufficient competition to create an inference of prejudice, but rather that a contrary inference resulted. With all due deference to the expertise which the Commission possesses in these matters, we cannot find any reasonable support in the evidence for these findings.

■ The evidence discloses, and the proposed report of Examiner John A. Russell points out, numerous instances of competition between points in Stanislaus County and points in the preferred areas which are not intermediate along existing railroad lines to San Francisco, as well as instances of actual injury to the county in failure to attract industry or to the industries located in the county by the imposition of higher rates.[5] While the proposed report of the Examiner is not binding on the Commission, it is entitled to consideration by the Court on the issue of substantiality of the evidence (Wilson & Co. v. N. L. R. B., 8 Cir., 123 F.2d 411; and A. E. Staley Mfg. Co. v. N. L. R. B., 7 Cir., 117 F.2d 868).

The Commission apparently recognized the existence of competition [6] but relied more heavily on evidence tending to indicate that industry in Stanislaus County has grown at a faster rate than in some parts of the preferred areas. Industry in Stanislaus may well have grown at an even faster rate, however, if it had not been for the rate disparity. We cannot say that the Commission could reasonably

conclude from this evidence that plaintiffs had not shown injury. Accordingly, we must set aside the Commission's finding that plaintiffs had failed to establish injury.

■ The basic findings of the Commission as stated in its order provides no rational basis for the ultimate finding reached. Since it appears that the Commission may not have reached the same result in the absence of the basic findings which have been set aside, this matter must be remanded to the Commission for further consideration in light of the views here expressed (Cf. Communist Party of U. S. v. Subversive Activities Control Board, 367 U.S. 1, 67, 81 S.Ct. 1357, supra; and N. L. R. B. v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348).

■ A final observation would seem appropriate. The railroads attempt to support the Commission's ultimate statutory finding by pointing out that the San Francisco group is long established, and that presumably, many industries have located in the preferred territory in reliance on the lower rates. They urge that it would be unjust to deprive such industries of the advantage that they have long enjoyed merely because the area in which they are located has ceased to be intermediate to San Francisco. We could not affirm an order of the Commission which would appear to be based upon such ground. Conditions violative of law cannot be justified on the ground that they have existed for a considerable time. The argument would lead to the conclusion that any inequity of long standing has somehow been transmogrified by time into a vested right, and would be contrary to the purposes of § 3(1) (Cf. New York v. United States, 331 U.S. 284, 315, 67 S.Ct. 1207, supra).

---

4. 315 I.C.C., at p. 465.

5. See: I.C.C. Docket No. 31901, Report Proposed by John A. Russell, Examiner, pages 12, 13, 17, 19–22, and 31.

6. "The Stanislaus Chamber of Commerce, for a number of years, has endeavored

to attract industries to locate within the county. * * * Although industries known to be contemplating the establishment of initial or branch plants in California have been actively solicited, they have usually selected locations in the alleged preferred area." (315 I.C.C., at p. 461.)

It is, therefore, ordered that the order appealed from be, and the same is, hereby annulled and set aside with directions to the Commission to take such action as is consistent with this order.

MacBRIDE, District Judge (dissenting).

For the reasons stated below, I feel compelled to dissent from the conclusion reached in the majority opinion, though if this were a matter of first impression, or if we were free to substitute our judgment for that of the Commission, my disposition might be different.

This is an action to set aside a negative order of the Interstate Commerce Commission in a case brought by plaintiffs under 49 U.S.C. § 3(1) to remove a rate disparity between two areas.

The Commission stated the ultimate statutory finding on which its order is based as follows: "On further consideration, we find that the rates assailed are not shown to be unduly prejudicial or preferential as alleged." 315 I.C.C. at p. 467.

The ultimate statutory finding is itself based on the Commission's subsidiary basic finding that: "[Plaintiffs] failed to sustain their burden of proving that the rate disparities complained of are a determining factor in their inability to meet market competition of the allegedly preferred area in the sale of products or in the attraction of new industries." 315 I.C.C. at pp. 464–465. This, in effect, is a negative finding that plaintiffs did not establish by direct evidence that they have been injured by the rate disparity and that they did not establish sufficient competition between the allegedly preferred and prejudiced areas to warrant an inference of injury from the fact of the rate disparity.

If the subsidiary basic finding set forth above has adequate support in the record, the ultimate statutory finding and order based thereon may not be set aside. For in order to bring a rate disparity within § 3(1) the complaining party must establish that it results in injury to the allegedly prejudiced area.

New York v. United States, 331 U.S. 284, 67 S.Ct. 1207, 91 L.Ed. 1492 (1946); Atchison, Topeka & Santa Fe Ry. Co. v. United States, 218 F.Supp. 359 (D.C.Ill. 1963).

(a) The scope of judicial review of a finding of fact such as the one presently being discussed is "extremely limited." I.C.C. v. Mechling, 330 U.S. 567, 574, 67 S.Ct. 894, 91 L.Ed. 1102 (1946).

In the first place, the general question of undue preference or prejudice under § 3(1) is "a question not of law, but of fact." Pennsylvania Co. v. United States, 236 U.S. 351, 361, 35 S.Ct. 370, 373, 59 L.Ed. 616 (1914). L. T. Barringer & Co. v. United States, 319 U.S. 1, 6, 63 S.Ct. 967, 87 L.Ed. 1171 (1942). It is "a question committed to the judgment of the administrative body, based on an appreciation of all the facts and circumstances affecting the traffic." Swayne & Hoyt v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 481, 81 L.Ed. 659 (1936). Therefore, a reviewing court may not set aside the findings of the Commission in a case under § 3(1) "except upon a showing that they are unsupported by evidence, were made without a hearing, exceed constitutional limits, or for some other reason amount to an abuse of power." Manufacturers Ry. Co. v. United States, 246 U.S. 457, 481, 38 S.Ct. 383, 389, 62 L.Ed. 831 (1917). "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 765, 83 L.Ed. 1147 (1938).

Moreover, the specific question of territorial injury, with which we are particularly concerned, is one which cannot always be conclusively determined with mathematical exactness and which consequently is a "matter of inference." See New York v. United States, supra, 331 U.S. 310, 67 S.Ct. 1207. See also 315 I.C.C. at p. 464, and Davis, Administrative Law Treatise, § 16.11 (1958). As such, it is peculiarly within the discretion and expert judgment of the Commission; for "[t]he weight to be attributed to the

facts proven or stipulated, and the inferences to be drawn from them, are for the Commission to determine, not the courts." Corn Products Refining Co. v. F. T. C., 324 U.S. 726, 739, 65 S.Ct. 961, 967, 89 L.Ed. 1320 (1945). Virginian Ry. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463 (1926). "[C]onsideration of the weight and value of the evidence and the inferences to be drawn therefrom are matters for the Commission alone." Koppers Co., Inc. v. United States, 166 F.Supp. 96, 104 (D.C.Pa. 1958). See, generally, 4 Davis, Administrative Law Treatise, § 29.05 (1958).

(b) Applying the above principles concerning the scope of judicial review to the record before the Commission, I conclude that it cannot properly be said that the finding of the Commission with respect to the question of injury has no adequate support therein. On the contrary, the Commission had before it, and it discussed in its report, detailed testimony and evidence on the questions of competition and injury; and its appraisal of such testimony and evidence provides a rational basis for that finding.

I note, first, that the record does contain substantial evidence from which the Commission could have concluded that Stanislaus County has been injured by the rate disparity. But this is not enough to warrant our setting aside the conclusion the Commission reached, as long as that conclusion itself has substantial support in the record. For the evidence in question does not create an irresistible inference of injury. Instead it is evidence which is capable of alternative interpretations. And, as has been noted above, this Court may not reweigh the evidence or choose between alternative inferences therefrom.

Plaintiffs presented evidence that industries known to be contemplating the establishment of plants in California have been actively solicited by Stanislaus County, but have frequently selected locations in the allegedly preferred area.

The Commission carefully considered such evidence. 315 I.C.C. at pp. 461–462. One inference which it might have drawn from it is that the rate disparity was a substantial factor causing such industries to locate in the allegedly preferred area and thus that Stanislaus County, the allegedly prejudiced area, has been injured by the disparity. See Proposed Report of Examiner John A. Russell, p. 31.

But, on the basis of certain other evidence in the record, the Commission chose the alternative inference. It noted that "[t]he specific reasons for not locating in Stanislaus County rarely, if ever, are disclosed * * *". 315 I.C.C. at p. 462. See also Proposed Report of Examiner John A. Russell, p. 31. Moreover, "[t]here are many factors which enter into the selection of sites for production facilities, including the availability and cost of raw materials, labor, fuel, and the proximity of markets for products." 315 I.C.C. at p. 466. Furthermore, the record discloses that during the existence of the rate disparity, and apparently in spite of it, many new industries chose locations in Stanislaus County, and there was a considerable expansion of existing industries in the county; and the Commission attached great importance to these facts. 315 I.C.C. at pp. 462 and 466. In view of the foregoing, and in view of the broad discretion of the Commission with respect to technical questions of economic causation, I believe that we should not set aside the Commission's interpretation of plaintiffs' evidence. Otherwise, we defeat one of the primary purposes underlying the creation of agencies such as the Commission, which is "to have decisions based upon evidential facts under the particular statute made by experienced officials with an adequate appreciation of the complexities of the subject which is entrusted to their administration". Radio Officers' Union etc. v. N. L. R. B., 347 U.S. 17, 48, 74 S.Ct. 323, 340, 98 L.Ed. 455 (1954).

With respect to the evidence, mentioned above, that Stanislaus County has grown at a faster rate than some parts of the allegedly preferred area, apparently

in spite of the rate disparity, plaintiffs argue that such evidence does not support the Commission's conclusion concerning the question of injury. They argue that the county might have grown even faster but for the rate disparity and that, therefore, the evidence of growth does not negate injury.

But there is nothing in the record to compel this conclusion; and, at any rate, I believe that it must be assumed that in appraising the evidence of growth the Commission considered and rejected the possibility that the county might have grown even faster but for the rate disparity. I believe that we may not assume that the Commission ignored that possibility as a factor in reaching its decision; for in other cases, which presumably involved evidence of injury stronger than that presented here, the Commission based its decision on that very factor. Washington Potato & Onion Shippers Ass'n. v. Union Pac. R. R., 300 I.C.C. 537 (1957); and Consolidated Mining & Smelting Co. of Canada, Ltd. v. New York Cent. R. R., 299 I.C.C. 231 (1956), aff'd sub nom. Ores From United States and Canada Origins to Eastern United States, 303 I.C.C. 87 (1958).

Moreover, the evidence in the record relating to the nature of the competition between the allegedly preferred and prejudiced areas is not such that an inference of injury from the mere fact of the rate disparity is necessarily required. See the Commission's appraisal of such evidence at 315 I.C.C. at p. 465. The fact that two areas are paying different rates cannot, by itself, logically give rise to an inference of injury to the area paying the higher rates unless there is, between the two areas, competition of such a nature that it is necessarily substantially affected by the rate disparity. Consolidated Mining & Smelting Co. of Canada, Ltd. v. New York Cent. R. R., supra. See Atchison, Topeka and Santa Fe Ry. Co. v. United States, 218 F.Supp. 359, 371–372, supra. See also concurring opinion of Commissioner Freas, 315 I.C.C. at p. 467, and cases cited therein.

The Commission concluded that "[Plaintiffs'] evidence regarding individual shippers, intended to supplement that offered on behalf of the county to show competition between the county and the allegedly preferred area and to establish the existence of unlawful preference and prejudice, falls short of its purpose. A survey of this evidence does not create an inference of prejudice but more reasonably leads to a conclusion opposite from that intended." 315 I.C.C. at p. 465. Although if I were free to reweigh the evidence referred to, I might have placed a different interpretation thereon, still I believe that the foregoing constitutes one reasonable appraisal of such evidence and, therefore, that it provides a rational basis for the Commission's findings. See concurring opinion of Commissioner Freas, 315 I.C.C. at p. 467, in which he states, "I think it clear, however, and the record and report so demonstrate, that a showing of competition so keen as to warrant the presumption of injury is lacking herein." Compare Chesapeake & O. Ry. Co. v. United States, 11 F.Supp. 588 (D.C.W.Va.1935).

Finally, although it would have been preferable for the Commission to have more explicitly stated the logical progression by which it arrived at its basic and ultimate findings, still under the cases the fact that it did not do so is not fatal to such findings. It is true that the Commission is required to state its findings, conclusions, and reasons. 5 U.S.C. § 1007(b). 49 U.S.C. § 14(1). But "[t]here is no requirement that the Commission * * * disclose mental operations by which its decisions are reached." Baltimore & O. Ry. Co. v. United States, 298 U.S. 349, 359, 56 S.Ct. 797, 803, 80 L.Ed. 1209 (1935). And "[t]he courts are not concerned with the correctness of the Commission's reasoning * * * *". Burlington Truck Lines, Inc. v. I. C. C., 194 F.Supp. 31, 37 (D.C.Ill. 1961). "To consider the weight of the evidence before the Commission, the soundness of the reasoning by which its conclusions were reached, * * * is beyond our province." Virginian Ry. Co.

v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 224, supra. See, generally, Davis, Administrative Law Text, § 16.11 (1958).

To summarize: The Commission has adequately stated its subsidiary basic finding that plaintiffs did not establish the requisite injury. That finding depends on questions of fact which necessarily are almost exclusively within the province of the Commission, and it has a rational basis in the record and in the discretion of the Commission. Consequently, the ultimate statutory finding and order based thereon should, I believe, be upheld.